Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/28/2016 09:09 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
JEFFREY HESSLER, APPELLANT.
___ N.W.2d ___

Filed October 28, 2016.    No. S-15-960.

1. **Judgments: Appeal and Error.** The findings of the district court in connection with its ruling on a motion for a writ of error coram nobis will not be disturbed unless they are clearly erroneous.

2. **Postconviction: Evidence: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law.

3. **Effectiveness of Counsel: Appeal and Error.** With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

4. **Judgments: Constitutional Law: Legislature: Appeal and Error.** The common-law writ of error coram nobis exists in this state under Neb. Rev. Stat. § 49-101 (Reissue 2010), which adopts English common law to the extent that it is not inconsistent with the Constitution of the United States, the organic law of this state, or any law passed by our Legislature.

5. **Judgments: Evidence: Appeal and Error.** The purpose of the writ of error coram nobis is to bring before the court rendering judgment matters of fact which, if known at the time the judgment was rendered, would have prevented its rendition. The writ reaches only matters of fact unknown to the applicant at the time of judgment, not discoverable through reasonable diligence, and which are of a nature that, if known by the court, would have prevented entry of judgment. The writ is not available to correct errors of law.

6. **Convictions: Proof: Appeal and Error.** The burden of proof in a proceeding to obtain a writ of error coram nobis is upon the applicant claiming the error, and the alleged error of fact must be such as would have prevented a conviction. It is not enough to show that it might have caused a different result.

7. **Trial: Effectiveness of Counsel: Appeal and Error.** Claims of errors or misconduct at trial and ineffective assistance of counsel are inappropriate for coram nobis relief.

8. **Postconviction: Judgments: Constitutional Law.** The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014), provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

9. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

10. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant.

11. **Trial: Pleas: Mental Competency.** A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.

12. **Pleas: Mental Competency: Right to Counsel: Waiver.** A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the defendant's competence.

13. **Effectiveness of Counsel: Mental Competency: Proof.** In order to demonstrate prejudice from counsel's failure to investigate competency and for failing to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found him or her incompetent had a competency hearing been conducted.

14. **Effectiveness of Counsel: Pleas: Proof.** To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial.

15. **Postconviction: Effectiveness of Counsel: Presumptions: Appeal and Error.** After a trial, conviction, and sentencing, if counsel deficiently fails to file or perfect an appeal after being so directed by the criminal defendant, prejudice will be presumed and counsel will be deemed ineffective, thus entitling the defendant to postconviction relief.

Appeal from the District Court for Scotts Bluff County: Randall L. Lippstreu, Judge. Affirmed.

Alan G. Stoler and Jerry M. Hug, of Alan G. Stoler, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and James D. Smith for appellee.

Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

NATURE OF CASE

Jeffrey Hessler appeals the order of the district court for Scotts Bluff County which overruled his motion for postconviction relief and denied his petition for a writ of error coram nobis. Hessler claimed that he had received ineffective assistance of trial counsel and was not competent to enter the plea on which his conviction for first degree sexual assault on a child was based. We affirm.

II. STATEMENT OF FACTS

In 2003, Hessler pled no contest to a charge of first degree sexual assault on a child. Hessler had been charged with sexually assaulting J.B., a girl under 16 years of age, on August 20, 2002. The district court accepted Hessler's plea and sentenced him to imprisonment for 30 to 42 years. No direct appeal was taken from the conviction and sentence.

While Hessler was facing the charge in that first case, he was also facing charges in a second case: first degree murder, kidnapping, first degree sexual assault on a child, and use of a firearm in connection with the assault and death of another girl

under 16 years of age, Heather Guerrero. Hessler pled no contest in the first case before the jury trial was held in the second case. Following the jury trial in the second case, Hessler was convicted and sentenced to death for Guerrero's murder. Hessler's convictions and sentences for the charges relating to Guerrero were affirmed on direct appeal to this court. *State v. Hessler*, 274 Neb. 478, 741 N.W.2d 406 (2007). This court also affirmed the overruling of Hessler's subsequent motions for postconvction relief relating to such convictions. *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011) (first postconviction motion); *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014) (second postconviction motion and motion for writ of error coram nobis).

On August 24, 2012, Hessler filed a pleading he titled as "Verified Motion for Postconviction Relief and Petition for Writ of Error Coram Nobis" in the instant case involving the sexual assault of J.B. That filing gives rise to the present appeal. Hessler alleged that the claims set forth in the filing entitled him to postconviction relief or, in the alternative, a writ of error coram nobis.

The district court determined that Hessler was entitled to an evidentiary hearing on claims which the court characterized as follows:

(1) a claim that Hessler was not competent to enter a plea of no contest, because at the time of the plea "he was suffering from bipolar disorder, severe, with psychotic features"; and

(2) claims that trial counsel was ineffective in

(a) "[f]ailing to investigate, raise, and prove" a claim that Hessler was not competent to enter a plea of no contest;

(b) "[a]dvising Hessler to plead 'no contest'";

(c) "[a]dvising Hessler that a plea of 'no contest' [in this case] would benefit him" by providing him with a double jeopardy defense to the pending charges involving the assault and death of Guerrero;

(d) "[f]ailing to investigate, discover, and present mitigating evidence at the sentencing hearing"; and

(e) "[f]ailing to advise Hessler to file a direct appeal" or to advise him that he "had a right to appeal and a right to counsel to pursue his appeal."

At the evidentiary hearing, the court received evidence including, inter alia, depositions of the two attorneys who had represented Hessler in the original conviction, depositions of a psychologist and a psychiatric nurse who had worked with Hessler in 2003, and the deposition of a psychiatrist who had reviewed Hessler's records and had met with Hessler in 2012 and 2013. Hessler did not testify. Following the evidentiary hearing, the court rejected all of Hessler's claims, overruled his motion for postconviction relief, and denied his petition for a writ of error coram nobis.

With regard to the claim that Hessler was not competent to enter a plea of no contest, the court noted that both attorneys who had represented Hessler in the original conviction were experienced criminal defense attorneys and that both had determined there was nothing indicating that Hessler was not competent to stand trial or that a mental health defense would be successful. The court noted trial counsel had stated that Hessler "was able to provide counsel with background information" and that he "appeared reasonably intelligent and appeared to understand the evidence and strategy of the case."

The court further noted that the psychologist who treated Hessler at the time of the conviction stated that although Hessler "suffered from a bi-polar mood disorder, depression, and paranoid delusional disorder," Hessler still "understood the release he signed, understood the potential consequences of his charges," "understood he was charged with sexual assault[,] and knew he was going to plead and would go to the penitentiary." The court noted the psychologist also stated that at the time of the plea, Hessler "was well aware of who [trial counsel] was and understood [trial counsel's] role in the case." The court further noted that the psychiatric nurse who treated Hessler stated that the medications he was given to treat his bipolar depression would clear his thinking such that he would

be "'more in reality'" and that Hessler "appeared to understand her questions and his responses were appropriate."

In connection with the issue pertaining to Hessler's competence to enter a plea, the court noted that Hessler presented the deposition of a psychiatrist who had been hired in connection with this postconviction action to review Hessler's records from the original conviction in 2003. Although the psychiatrist opined that in 2003, Hessler was "depressed" and had "paranoid thinking," the court noted that the psychiatrist stated he did not have adequate information to form a definitive opinion on "what [e]ffect [such conditions] would have on Hessler's ability for rational choices about entering a plea of no contest."

Considering the evidence presented, the court concluded that "Hessler's evidence failed to demonstrate a reasonable probability that he was, in fact, incompetent to enter a plea of no-contest to sexually assaulting J.B., or that the trial court would have found him incompetent had a competency hearing been conducted." The court further determined that because the record showed Hessler to be competent, "his counsel could not have been ineffective in not raising an issue of competency."

The court then considered Hessler's other claims directed at ineffective assistance of counsel. Regarding Hessler's claim that counsel was ineffective for advising him to plead no contest, the court noted that prior to trial in this case, counsel knew "(1) that Hessler had confessed to the sexual assault of J.B., (2) efforts to suppress Hessler's confession had not been successful, and (3) DNA testing had scientifically confirmed his confession." The court also noted that "Hessler had advised [counsel] early on that he did not want a trial in the J.B. sexual assault case." The court further noted that the same counsel who represented Hessler in this case represented him in connection with the charges related to the assault and killing of Guerrero. Counsel knew that Hessler would be at risk of a death sentence for the murder of Guerrero and that the

State would attempt to use the sexual assault of J.B. to prove an aggravating circumstance in the murder trial. The postconviction court found that "counsel embarked on a global strategy encompassing both cases with the ultimate goal of saving [Hessler's] life." Because counsel had determined that there was "no viable defense to the J.B. sexual assault case," counsel attempted to "preclude use of the sexual assault of J.B. as an aggravating circumstance in the [Guerrero] homicide case."

Counsel's strategy was to have "a final conviction and sentence in the sexual assault case [involving J.B.] prior to trial in the homicide case [involving Guerrero]" and then "to later present a double jeopardy / plea in bar argument against its use as an aggravating circumstance in the homicide trial." The court noted that counsel had explained this strategy to Hessler and had advised him that the double jeopardy or plea in bar "theory was untested." Hessler agreed to the strategy and advised counsel he wanted to plead in the instant case.

The postconviction court noted that the strategy to preclude the sexual assault conviction in this case from being used in the homicide case ultimately proved to be unsuccessful and that the sexual assault of J.B. was allowed to be used to prove an aggravating circumstance in the homicide sentencing trial. The court concluded, however, that counsel was not ineffective for advising Hessler to plead no contest or for so advising him as part of the global strategy for both cases. The court concluded that "[c]onfronted with overwhelming evidence of guilt, Hessler's trial counsel were not ineffective by attempting novel legal defenses." The court further noted that counsel's advice was "consistent with Hessler's expressed desire to admit to the sexual assault" of J.B.

With respect to Hessler's claim that counsel was ineffective for failing to investigate, discover, and present mitigating evidence at the sentencing hearing, the postconviction court did not explicitly reject the claim. However, the court found that "[c]ounsel were never concerned about a sentence in the sexual

assault [of J.B.] case because Hessler would never live outside prison in the homicide [of Guerrero] case." The court considered such lack of focus on the sentence in the instant case to be part of the global strategy that encompassed counsel's advice to plead no contest in this case in hopes of improving Hessler's outcome in the homicide case. The court determined that such global strategy did not constitute ineffective assistance of counsel.

Finally, with respect to Hessler's claim that counsel was ineffective for failing to advise him to file a direct appeal in this case, the court found that "Hessler provided no evidence that he ever requested counsel appeal his conviction and sentence in this case." The court further concluded that Hessler had "shown no prejudice by the failure to file a direct appeal."

Hessler appeals the order which overruled his motion for postconviction relief and denied his petition for a writ of error coram nobis.

## III. ASSIGNMENTS OF ERROR

Hessler claims that the postconviction district court erred when it rejected his claims that (1) he was denied due process and effective assistance of counsel because he was not competent to enter a plea of no contest, (2) trial counsel's advice to plead no contest was ineffective assistance of counsel, (3) trial counsel's failure to discover and present mitigating evidence at sentencing was ineffective assistance of counsel, and (4) trial counsel's failure to advise him to file a direct appeal was ineffective assistance of counsel.

## IV. STANDARDS OF REVIEW

[1] The findings of the district court in connection with its ruling on a motion for a writ of error coram nobis will not be disturbed unless they are clearly erroneous. *State v. Harrison*, 293 Neb. 1000, 881 N.W.2d 860 (2016).

[2] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court

upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law. *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016).

[3] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Saylor, supra.*

## V. ANALYSIS

### 1. District Court Did Not Err When It Denied Hessler's Petition for Writ of Error Coram Nobis

In this action Hessler set forth various claims and alleged that such claims entitled him to postconviction relief or, in the alternative, a writ of error coram nobis. A writ of error coram nobis is relief distinct from relief available under the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014). As we noted in *State v. Harris*, 292 Neb. 186, 871 N.W.2d 762 (2015), § 29-3003 provides that relief under that act "is not intended to be concurrent with any other remedy existing in the courts of this state," including a writ of error coram nobis. Therefore, we consider whether Hessler's claims would entitle him to a writ of error coram nobis separately from our consideration of Hessler's claims for relief under the Nebraska Postconviction Act. We conclude that the district court did not err when it denied Hessler's petition for a writ of error coram nobis.

[4-6] The common-law writ of error coram nobis exists in this state under Neb. Rev. Stat. § 49-101 (Reissue 2010), which adopts English common law to the extent that it is not inconsistent with the Constitution of the United States, the organic law of this state, or any law passed by our Legislature. *State v. Sandoval*, 288 Neb. 754, 851 N.W.2d 656 (2014). The

purpose of the writ of error coram nobis is to bring before the court rendering judgment matters of fact which, if known at the time the judgment was rendered, would have prevented its rendition. *State v. Harrison, supra*. The writ reaches only matters of fact unknown to the applicant at the time of judgment, not discoverable through reasonable diligence, and which are of a nature that, if known by the court, would have prevented entry of judgment. *Id*. The writ is not available to correct errors of law. *Id*. The burden of proof in a proceeding to obtain a writ of error coram nobis is upon the applicant claiming the error, and the alleged error of fact must be such as would have prevented a conviction. It is not enough to show that it might have caused a different result. *State v. Harris, supra.*

[7] In *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014), we affirmed the denial of Hessler's request for a writ of error coram nobis in connection with his convictions related to the assault and murder of Guerrero. In that case, Hessler raised claims that were similar to claims he raises here. In that appeal, we stated that claims of errors or misconduct at trial and ineffective assistance of counsel are inappropriate for coram nobis relief. Similarly, most of Hessler's claims in the present action are claims of ineffective assistance of trial counsel, and thus, such claims are inappropriate for coram nobis relief.

Hessler's claim in this case with regard to his mental competence was based in part on his claim of a denial of his right to effective assistance of counsel, but the claim was also based in part on an alleged denial of his due process rights. Hessler made similar allegations with regard to his mental competence in his request for a writ of error coram nobis in connection with the convictions related to the homicide of Guerrero. See *id*. Without explicitly deciding whether a meritorious claim of a denial of due process based on a defendant's mental incompetence would be appropriate for coram nobis relief, we determined on appeal that Hessler's claim relating to mental competence was without merit and therefore did not

entitle him to coram nobis relief. *Id*. As discussed below in connection with Hessler's request for postconviction relief in this case, Hessler's claims related to mental competence are also without merit and similarly do not entitle him to a writ of error coram nobis.

Hessler has not identified a fact which would have prevented entry of judgment. The substance of Hessler's claims in this action either is not appropriate for coram nobis relief or is without merit. Accordingly, we conclude that the district court did not err when it denied Hessler's petition for a writ of error coram nobis.

### 2. DISTRICT COURT DID NOT ERR WHEN IT OVERRULED HESSLER'S MOTION FOR POSTCONVICTION RELIEF

[8] Before considering Hessler's specific claims for postconviction relief, we review the applicable general standards. The Nebraska Postconviction Act, § 29-3001 et seq., provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016).

[9,10] Most of Hessler's claims in this action center on the alleged ineffective assistance provided by his trial counsel. A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *Id*. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 446 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant. See *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016).

### (a) Mental Competence

Hessler first claims that the district court erred when it rejected his claim that because he was not competent to enter

a plea of no contest, he was denied due process and effective assistance of counsel. Hessler argues both that he was denied due process because the court accepted his plea when he was mentally incompetent and that trial counsel was ineffective for failing to investigate and pursue a claim that he was not competent to stand trial or enter a plea. We find no merit to this assignment of error.

[11-13] A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). The test of mental capacity to plead is the same as that required to stand trial. *Id*. A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the defendant's competence. *Id*. In order to demonstrate prejudice from counsel's failure to investigate competency and for failing to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found him or her incompetent had a competency hearing been conducted. *Id*.

At the evidentiary hearing in this case, Hessler's trial counsel testified that there was nothing that indicated that Hessler was not competent to stand trial or that a mental health defense would be successful. To the contrary, the court noted that trial counsel testified that Hessler "was able to provide counsel with background information" and "appeared reasonably intelligent and appeared to understand the evidence and strategy of the case." In addition, the court noted the psychologist who treated Hessler at the time of the conviction stated that although Hessler suffered from conditions including "bi-polar mood disorder, depression, and paranoid delusional disorder," Hessler was still able to understand important aspects of the

proceedings against him including "the release he signed, . . . the potential consequences of his charges, [that] he was charged with sexual assault and [that] he was going to plead and would go to the penitentiary." The psychologist stated that Hessler knew who his trial counsel were and their role in the proceedings. In addition, the court noted the psychiatric nurse who treated Hessler stated that the medications he was given helped him and that he "appeared to understand her questions and his responses were appropriate."

Such evidence would indicate that Hessler was mentally competent at the time of his conviction under the legal standards set forth above. The evidence indicated that he had "the capacity to understand the nature and object of the proceedings against him . . . , to comprehend his . . . own condition in reference to such proceedings, and to make a rational defense." See *State v. Dunkin*, 283 Neb. at 44, 807 N.W.2d at 756. The evidence recounted above indicated that Hessler was competent, and Hessler failed to present evidence to call his competence into question. With regard to the latter proposition, Hessler presented the deposition of a psychiatrist who had been retained in connection with this postconviction action to review Hessler's records from the original conviction in 2003. Although the psychiatrist opined that in 2003, Hessler was "depressed" and had "paranoid thinking," the court noted that the psychiatrist stated that he did not have adequate information to form a definitive opinion on "what [e]ffect [such conditions] would have on Hessler's ability for rational choices about entering a plea of no contest." As noted above, the psychologist who treated Hessler at the time of the conviction also determined that Hessler had mental health issues, but that despite such conditions, he was able to understand the proceedings.

The record indicates that Hessler was legally competent at the time of his conviction, and in this postconviction action, he failed to present evidence to dispute such determination. Because there was nothing to indicate to either the trial court

or counsel that Hessler was not competent to stand trial or enter a plea, there is no merit to Hessler's claims that the court violated his due process rights by accepting his plea and that counsel provided ineffective assistance by failing to investigate or pursue a claim that he was not competent. The district court therefore did not err when it denied postconviction relief on Hessler's claims related to mental competence.

### (b) Plea Advice

Hessler next claims that the district court erred when it rejected his claim that trial counsel's advice to plead no contest was ineffective assistance of counsel. Hessler argues that counsel's advice was deficient because it was based on a strategy pursuant to which he would enter a plea in this case in order to prevent the sexual assault of J.B. from being used to prove an aggravator in the murder case involving Guerrero. The strategy did not work out, and the sexual assault of J.B. was ultimately used to prove an aggravator in the murder case. We find no merit to this assignment of error.

[14] To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial. *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015). Therefore, Hessler needed to show that if counsel had not given the allegedly erroneous advice to enter a plea in this case, he would have insisted on going to trial.

Hessler contends that counsel's strategy was unreasonable because it was based on a mistaken reading of the law as it existed at the time of his conviction. However, whether or not the strategy was based on a good reading of the law at the time, we note that counsel testified that the strategy had been explained to Hessler, and the court observed that Hessler had been told that the strategy was "untested." Counsel made no guarantee that the strategy would be successful, and Hessler agreed to the strategy with knowledge of its uncertainty.

Furthermore, even without considering the global strategy relating to the separate homicide case against Hessler, the record indicates that counsel had reasons to advise Hessler to plead in this case. The district court in this postconviction action noted in its order that Hessler had confessed to the sexual assault of J.B., that efforts to suppress the confession were unsuccessful, and that DNA evidence was consistent with the confession. The court also noted that Hessler had advised counsel that he did not want a trial in this case. As the district court concluded, counsel's advice to enter a plea was not deficient in light of the "overwhelming evidence" against Hessler and his stated desire to avoid a trial.

Whether or not counsel's advice regarding the global strategy proved erroneous, Hessler has not shown that if counsel had not given such advice, he would have insisted on going to trial. The record indicates that given the strength of the State's case against him in this case and his own stated desire to avoid a trial, Hessler had sufficient reason to enter a plea independently of counsel's advice regarding the global strategy. Therefore, Hessler has not shown that but for the allegedly erroneous advice he would have gone to trial. We conclude that the district court did not err when it rejected Hessler's claim that counsel was ineffective for advising him to enter a plea.

### (c) Mitigating Evidence

Hessler next claims that the district court erred when it rejected his claim that trial counsel's failure to discover and present mitigating evidence at sentencing was ineffective assistance of counsel. Hessler's arguments focus on counsel's alleged failure to adequately investigate and address issues of his mental competence; he argues that if the trial court had been made aware of his mental health issues, the court would have determined that he was not competent to understand the sentencing process. We find no merit to this assignment of error.

As we discussed above, Hessler did not present evidence to show that he did not meet the legal standard of competence, and instead, the record indicated that he was able to understand the proceedings against him, including the sentencing aspects of the proceedings. We note in particular with regard to sentencing that the psychologist who treated Hessler at the time of the conviction stated that Hessler "understood the potential consequences of his charges" and that Hessler knew that by entering a plea, he "would go to the penitentiary."

Other than his alleged mental incompetence, Hessler presented no evidence of mitigating circumstances that counsel should have discovered and presented at his sentencing. We therefore conclude that the district court did not err when it rejected Hessler's claim that trial counsel was ineffective for failing to discover and present mitigating evidence at sentencing.

### (d) Direct Appeal

Hessler finally claims that the district court erred when it rejected his claim that trial counsel's failure to advise him to appeal was ineffective assistance of counsel. Hessler contends various issues could have been raised on appeal. We find no merit to this assignment of error.

[15] After a trial, conviction, and sentencing, if counsel deficiently fails to file or perfect an appeal after being so directed by the criminal defendant, prejudice will be presumed and counsel will be deemed ineffective, thus entitling the defendant to postconviction relief. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). The court in this postconviction case found that "Hessler provided no evidence that he ever requested counsel appeal his conviction and sentence in this case." Such finding was consistent with the court's determination that Hessler was in agreement with counsel's global strategy to enter a plea in this case and refrain from filing a direct appeal in order to have a final judgment before the trial in the murder case. The postconviction court's finding that Hessler has not shown that counsel failed to file a direct appeal after

being directed to do so is not clearly erroneous. See *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016).

In connection with the direct appeal issue, Hessler contends that trial counsel was deficient because counsel should have advised him to appeal and to raise certain issues on appeal. In this respect, the district court in this postconviction action concluded that Hessler has "shown no prejudice by the failure to file a direct appeal." Although Hessler describes certain issues which could have been raised on appeal, such as the denial of his motion to discharge the jury panel and the denial of his motions to suppress, he did not demonstrate that such issues would have been successful on appeal. Furthermore, because Hessler entered a plea, certain issues related to his conviction were waived. See *State v. Lee*, 290 Neb. 601, 861 N.W.2d 393 (2015) (noting that normally, voluntary guilty plea waives all defenses to criminal charge). We have recognized that in a postconviction proceeding brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel. *Id*. Above, we considered and rejected Hessler's allegation that his plea was the result of ineffective assistance of counsel, and Hessler has not shown that any of the issues he suggests could have been raised on direct appeal were of such merit that counsel's advice to enter the plea was deficient.

To illustrate Hessler's assertion that colorable issues should have been presented on appeal, we note that Hessler contends that on direct appeal, he could have shown a denial of due process because the trial court and court reporter failed to make a verbatim record of the plea hearing. He asserts that an appellate court would have vacated his conviction and remanded the matter for new proceedings to be held in the presence of a court reporter. The district court in this postconviction action acknowledged that a verbatim record of the plea hearing was unavailable and that the court reporter was now incompetent to provide such a record. The district court

determined, however, that the lack of a verbatim record did not prejudice Hessler, because counsel's strategy was to enter a plea with no appeal.

In its order, the court cited *State v. Deckard*, 272 Neb. 410, 722 N.W.2d 55 (2006), in which we concluded that the lack of a verbatim record did not violate defendant's due process rights with respect to his postconviction proceeding because the trial court's journal entries were sufficient to review the defendant's postconviction claims. Hessler asserts that *Deckard* does not apply here because the record in this case is not sufficient to review his various claims, including that he was mentally incompetent, and that without the verbatim record, it cannot be determined whether the trial court knew of his mental health issues and therefore whether the court properly considered whether he was competent to enter his plea.

However, as we determined above, Hessler has not shown that he was not mentally competent to enter a plea, and instead, the evidence and record indicated that he was competent, as the postconviction court found. The court's acceptance of his plea indicates that the court viewed him as competent to enter the plea, and a verbatim record of the proceeding was not necessary to review that claim.

Hessler has not shown either that counsel ignored his request to file a direct appeal or that counsel was ineffective for failing to advise him to take a direct appeal. We therefore conclude that the district court did not err when it rejected this claim.

## VI. CONCLUSION

Having rejected each of Hessler's claims on appeal, we affirm the district court's order which overruled his motion for postconviction relief and denied his petition for a writ of error coram nobis.

AFFIRMED.

HEAVICAN, C.J., not participating.