IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HARKENDORFF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NICOLE L. HARKENDORFF, APPELLANT.

Filed February 4, 2020.    No. A-19-735.

Appeal from the District Court for Richardson County: JULIE D. SMITH, Judge. Affirmed.

Dylan L. Handley, of Handley Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Nicole L. Harkendorff appeals from her plea-based conviction for one count of assault in the third degree. She assigns as error that her trial counsel provided ineffective assistance by failing to file a motion to have her competence evaluated. Upon our review, we find that Harkendorff was not provided with ineffective assistance in that regard and, accordingly, we affirm her conviction and sentence.

## BACKGROUND

On December 3, 2018, the State filed an information charging Harkendorff with two counts of third degree assault on a law enforcement officer, each a Class IIIA felony, and with one count of criminal mischief, a Class III misdemeanor. Harkendorff pleaded not guilty to the charges alleged in the information. However, on April 9, 2019, both Harkendorff and the State appeared before the district court and indicated that they had reached a plea agreement. As a part of the plea

agreement, the State filed an amended information charging Harkendorff with one count of assault in the third degree, a Class I misdemeanor, and Harkendorff agreed to plead no contest to the amended charge. In addition, the State agreed to dismiss another matter which was pending in the county court; agreed not to file a protection order violation charge against Harkendorff; and agreed not to object to a sentence of probation.

Upon the district court's inquiry, Harkendorff indicated that the plea agreement described to the court reflected the entirety of the agreement between her and the State. She denied that anyone had threatened her or made promises to her to compel her to plead no contest to the amended charge. In addition, she affirmed that she understood the constitutional rights she was waiving by pleading no contest. Harkendorff explicitly indicated to the court that she understood the court proceedings and that she was not experiencing any confusion. She also indicated that she did not need any further time to discuss her case with her counsel because she had previously told counsel everything she knew about the case and had discussed all possible defenses to the amended charge. Harkendorff informed the court that she was satisfied with her counsel's work on the case.

The State provided a factual basis for Harkendorff's no contest plea. According to that factual basis, on September 19, 2018, officers from the Fall City police department were dispatched to a local convenience store where they encountered Harkendorff. Harkendorff had reportedly been involved in an altercation with another individual at that location. During the altercation, Harkendorff was assaulted and knocked to the ground. Because officers were concerned about Harkendorff's well-being, they requested that an ambulance be sent to transport Harkendorff to the hospital. Harkendorff repeatedly indicated that she did not want to leave in the ambulance. She appeared very agitated and stated that instead, she wanted to go find certain people and "take care of them." Eventually, Harkendorff agreed to get into the ambulance.

While the ambulance was en route to the hospital, Harkendorff threatened to jump out of the vehicle while it was still moving. The ambulance crew decided that the safest alternative at that point was to follow Harkendorff's instructions and drive her home, rather than to the hospital. When the ambulance arrived at Harkendorff's home, she continued to act in an agitated manner. She went into the house and "busted through the window of her front door." Because the ambulance crew did not feel it was safe to leave Harkendorff alone, they again contacted the police. The officers who arrived at the scene determined that Harkendorff should be placed into protective custody.

Harkendorff was transported to the Community Medical Center to be medically cleared prior to being placed into protective custody. While at the medical center, Harkendorff attempted to escape custody. She kicked one police officer twice and bit his left pinky finger. She was then physically restrained and transported to the Falls City Police Department.

Harkendorff did not dispute the factual basis as iterated by the State. She did, however, indicate that she was choosing to plead no contest because she was "fighting for my kids."

The district court found that Harkendorff "was following [the court's] questions and giving suitable answers when asked." The court noted that Harkendorff appeared "to be normal," although the court also noted that it was clear Harkendorff was upset. The court stated, "It appears that you're clearheaded and that you're not confused about the court proceedings." Ultimately, the district court found that Harkendorff understood the nature of the charge against her and the

possible penalty; that she understood her rights; and that she had waived those rights freely, voluntarily, knowingly, and intelligently. The court then accepted Harkendorff's plea of no contest to one count of assault in the third degree. The district court ordered that a presentence report (PSR) be completed and indicated that as a part of that report, Harkendorff should undergo a co-occurring mental health and substance abuse evaluation.

The PSR revealed that Harkendorff is 40 years old and possesses a high school diploma. She has four minor children; however, she does not have custody of those children, as they were placed by the State with Harkendorff's father. Harkendorff is unemployed. Harkendorff admitted to using marijuana two times per week since she was 18 years old. She explained that marijuana use calms her anxiety. She denied use of any other illegal substances.

Harkendorff's criminal history reveals that she has been previously convicted of assault; disturbing the peace; injuring or destroying property of another; attempt of a Class I misdemeanor (the underlying offense being resisting arrest); hindering, delaying or interrupting arrest; and theft by unlawful taking. As a result of these convictions, Harkendorff has been jailed five times and has successfully completed one term of probation. The probation officer who completed the PSR noted that Harkendorff has a pattern of offenses in the areas of assault, resisting arrest, and theft.

Testing conducted by the probation office revealed that Harkendorff posed a "high" risk of reoffending. Additionally, Harkendorff did not accept responsibility for her actions which led to the current charge. Instead, she viewed herself as the victim and explained that she acted out because she was sad and angry.

Also included as a part of the presentence report, are the results of Harkendorff's co-occurring evaluation, which was ordered by the district court and which took place on June 13, 2019, a few months after she pled no contest to the amended charges. The report generated from Harkendorff's evaluation indicates that Harkendorff "behaved bizarrely during the assessment suggesting symptoms of psychosis and recent substance abuse." Harkendorff was found to be "actively psychotic," but the evaluator was unsure if her psychosis was substance induced. Contrary to her statements to the probation officer, during the evaluation, Harkendorff admitted to regularly using both methamphetamine and marijuana. She also admitted that she does not use her prescribed psychiatric medications as intended.

Ultimately, the evaluator found that Harkendorff had adequate cognitive functioning and understood right from wrong. The evaluator also noted that while

> [t]here were initially concerns about [Harkendorff]'s overall competency, [] as [Harkendorff] became more comfortable she seemed to be withholding information at times, and had more knowledge of the issues than what she initially shared. As the interview progressed this therapist ascertained the client is ordered to complete this evaluation by the district court of Richardson County due to an incident in which she assaulted a police officer. It is unclear if client intended to assault the officer. She was under the influence of substances when the incident occurred and was likely experiencing a psychotic episode. It remains unclear if the client's psychosis is fully substance induced; she has a long standing history of mental illness and addiction. Client reported the incident occurred sometime in 2018 and happened because she was trying to resist an attack by law enforcement having been recently gang raped.

At the sentencing hearing, on July 9, 2019, the State recommended that Harkendorff be sentenced to a period of probation. Harkendorff's counsel requested something more informal than probation. Counsel informed the court that Harkendorff

> is doing well now. She has her own apartment. She is applying for SSI. It looks like it's going to be approved, hopefully, very soon. She has been attending [mental health treatment] for . . . four weeks in a row . . . and the -- she has a good relationship with that psychiatrist, the psychiatrist that's meeting with her. Also has an aide that assists her and can help Ms. Harkendorff, help monitor what's going on with her, help her with things that she needs, accessing resources, those kinds of things.

When the court asked if Harkendorff had anything to say prior to sentencing, she stated that she did not remember the events surrounding her current charge. She reiterated her counsel's statements that she was doing good and participating in mental health treatment with a psychiatrist, whom she trusted. She also indicated that she did not want to be placed on probation because she did not want someone constantly monitoring her and believed she could attend her psychiatric appointments without prompting. Harkendorff explained, "I can make better choices if given the opportunity."

The district court indicated that it had fully reviewed the PSR and all of the pertinent factors to consider in sentencing Harkendorff. It acknowledged that Harkendorff did not wish to be sentenced to a period of "traditional probation," but found that "this is a serious offense and your options really are jail or probation." The court sentenced Harkendorff to 18 months of probation.

After the district court announced its sentencing decision, Harkendorff began to interrupt the court's explanation of the terms of Harkendorff's probation. She told the court that she should plead not guilty to the charge because she did not remember anything that happened and because the officers involved lied about what happened. She also expressed her anger over having to be monitored by someone when she was the victim of a rape and assault and when the officers lied about the circumstances surrounding her charge. The court took a brief recess so that Harkendorff could calm down and stated "[w]hen you come back in, I'm going to finish your sentencing. If there are any outbursts during the remainder of your sentencing, I will hold you in contempt of Court, you'll be escorted by the sheriff's deputy to jail." When Harkendorff returned after the recess, she was calm and listened to the terms of her probation.

Harkendorff appeals here.

## ASSIGNMENT OF ERROR

On appeal, Harkendorff assigns as error that her trial counsel provided ineffective assistance by failing to file a motion to have her competence evaluated.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. See *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14

(2014). We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. See *id.*

ANALYSIS

Harkendorff is represented in this direct appeal by different counsel than the counsel who represented her at the trial level. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*. See, also, *State v. Filholm,* 287 Neb. 763, 848 N.W.2d 571 (2014).

In her brief on appeal, Harkendorff asserts that her trial counsel was ineffective in failing to file a motion to have her competence evaluated. Specifically, she asserts that her statements and actions during her arrest, the plea hearing, and the sentencing hearing demonstrate that she "was not competent during those times, specifically during the entry of plea and did not have the ability to make a rational decision during trial." Brief for appellant at 2.

Upon our review, we conclude that the record on appeal is adequate for us to review Harkendorff's allegation of ineffective assistance of counsel. We determine that counsel did not provide ineffective assistance in failing to file a motion to have Harkendorff's competence evaluated and that, even if counsel was somehow deficient in failing to file such a motion, Harkendorff cannot show that she was prejudiced by counsel's failure.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition

in reference to such proceedings, and to make a rational defense. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016). The test of mental capacity to plead is the same as that required to stand trial. *Id*. A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the defendant's competence. *Id*. In order to demonstrate prejudice from counsel's failure to investigate competency or to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found him or her incompetent had a competency hearing been conducted. *Id*.

During the plea hearing, there was no indication that Harkendorff was not competent. She clearly followed the questions of the district court and provided appropriate answers. Harkendorff explicitly stated that she understood the court proceedings and that she was not experiencing any confusion. She also explicitly denied being under the influence at the time of the plea hearing. Harkendorff informed the court that she did not need any further time to discuss her case with her counsel because she had previously told counsel everything she knew about the case and had discussed all possible defenses to the amended charge. Harkendorff's interactions with the district court during the plea colloquy indicate that she understood the nature and object of the proceedings against her, comprehended her own condition in reference to such proceedings, and discussed any possible defenses with counsel. In fact, Harkendorff even informed the district court that part of the reason she had decided to plead no contest to the amended charge was because she wished to work toward regaining custody of her children.

We note that Harkendorff's decision to enter into the plea agreement with the State appears to be very rational. By pleading guilty to the amended charge, which was a Class I misdemeanor, Harkendorff avoided being convicted of two felony charges. In addition, she avoided the State filing additional charges against her in separate actions. Finally, given that the State had agreed to recommend a term of probation, Harkendorff likely avoided jail time.

At the sentencing hearing, there was also no indication that Harkendorff lacked competence. While we do find her actions after the district court imposed a sentence of probation to be unusual, those actions did not indicate a lack of competence. Rather, it was clear from Harkendorff's outburst that she understood that she was being sentenced to a period of probation and that such probationary period included a certain amount of monitoring and oversight by the probation office. Harkendorff also appeared to understand the nature of the charge she had pled to, as she repeatedly indicated that the officers involved had lied about her actions and that the video of the situation demonstrated that she was incapable of assaulting the officer.

We recognize that Harkendorff also argues in her appellate brief that her actions at the time of her arrest indicate that she lacked competence to plead no contest to the amended charge. However, evidence contained in the PSR indicates that at the time of Harkendorff's arrest, she was under the influence of a controlled substance. This stands in stark contrast to her assertion at the plea hearing that she was not under the influence of any substance. Moreover, it is not clear how Harkendorff's behavior at the time of her arrest correlates to her ability to understand and participate in legal proceedings more than 6 months later.

Ultimately, we conclude that defense counsel did not provide ineffective assistance in failing to request that Harkendorff's competence be evaluated. Based upon our review of the record, it is clear that during the plea hearing and during her sentencing, Harkendorff had the capacity to understand the nature and object of the proceedings against her, comprehended her own condition in reference to such proceedings, and discussed possible defenses with counsel. As such, had counsel requested that Harkendorff's competency be evaluated, such request would probably have been denied, as the court had no reason to doubt Harkendorff's competence.

Moreover, we find that even if counsel had been deficient in failing to request an evaluation of Harkendorff's competence, Harkendorff cannot show she was prejudiced by the failure because during her co-occurring mental health evaluation prior to the sentencing hearing, she was evaluated for competence and was determined to be competent to participate in the legal proceedings. While the evaluator noted that Harkendorff's behavior was bizarre and she appeared to be actively psychotic, the evaluator ultimately found that Harkendorff understood the legal proceedings she was facing, including the possible sentence for her conviction. In addition, Harkendorff was able to describe the circumstances surrounding her arrest and explained that she believed that she was the victim in the situation. The evaluator also found that Harkendorff possessed adequate cognitive functioning and understood right from wrong. As such, despite Harkendorff's mental illness and her substance use, the results of her mental health evaluation reflect that she was competent to plead no contest to the amended charge and to be sentenced for her conviction.

CONCLUSION

We find that Harkendorff was not denied effective assistance of trial counsel when counsel failed to request that her competence be evaluated. The evidence in the record reflects that Harkendorff was competent at the time of her plea hearing and her sentencing.

AFFIRMED.