IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SCOTT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LEVI K. SCOTT, APPELLANT.

Filed September 24, 2019.    No. A-18-296.

Appeal from the District Court for Lincoln County: DONALD E. ROWLANDS, Judge. Affirmed.

P. Stephen Potter for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Levi K. Scott appeals from his plea-based conviction in the Lincoln County District Court for attempted first degree sexual assault. He was sentenced to 3 to 9 years' imprisonment. He claims that his sentence is excessive and that his trial counsel was ineffective. We affirm.

## II. BACKGROUND

In January 2017, the State filed a complaint in the county court for Lincoln County, charging Scott with "First Degree Sexual Assault of a Child 28-319(1)(c) Class II Felony." Scott waived a preliminary hearing; the county court bound Scott over to the district court where the State filed an information in April, reflecting the same charge against Scott as alleged in the county court. Scott entered a plea of not guilty.

In July 2017, Scott filed a "Motion to Determine Competence," asking the district court to "appoint a qualified psychiatrist, psychologist or other mental health professional(s)" to determine his competency to stand trial. Scott's trial counsel alleged that Scott had "possibly engaged in communications with external sources," including the court and county attorney, while the case was pending "despite repeated conversations . . . in which [Scott] agreed not to [do so], as [they had] potentially contained admissions against [Scott's] interests." Scott's trial counsel also claimed Scott had shown "other behaviors" that called into question his ability to aid in his own defense. At a hearing later that month, the State did not contest the motion. In an August order, the court sustained the motion and appointed Dr. Rebecca Schroeder to complete the evaluation. At a November hearing, Scott's trial counsel related that Dr. Schroeder concluded Scott was competent; on the court's own motion, it received the evaluation as a sealed exhibit (it is part of our record within Scott's presentence investigation report (PSR)).

On December 4, 2017, the State filed an amended information, changing the charge against Scott to attempted first degree sexual assault of a child, and referencing "28-201 28-319-1." The State erroneously labeled the offense as a Class III felony. During a hearing that same day, Scott entered a plea of no contest to that charge. The factual basis for Scott's plea of no contest, as provided by the State, was as follows:

> Law enforcement conducted an investigation after receiving a report that on or about September 5 of 2016 . . . Scott, who at the time was 19 years of age, did attempt to subject a young girl who at the time was 12 years of age to sexual penetration, and all these events occurred in Lincoln County, Nebraska.

The district court, finding that Scott's plea was made knowingly, intelligently, and voluntarily, and was supported by a factual basis, accepted his plea and found Scott guilty as charged.

On December 12, 2017, the State filed a second amended information in which the only changed content from its prior amended information was that the charge was now properly labeled a Class IIA felony. At a hearing on February 12, 2018, the district court clarified to Scott that although the State originally filed an amended information showing a Class III felony, the State had filed the second amended information of "the same charge [of] attempted first degree sexual assault of a child, but [was] alleging that [it was] a Class IIA felony." The district court explained to Scott the possible consequences of being convicted of a Class IIA felony and the charged offense. When asked if he understood that he pled to a Class IIA felony rather than a Class III felony, Scott answered affirmatively. Thereafter, the court issued an order upon the parties' stipulation that on December 4, 2017, Scott entered a plea of no contest to attempted first degree sexual assault of a child, "which is a Class IIA Felony." In a "Judgment" entered on March 8, 2018, the district court found Scott "guilty of Attempted First Degree Sexual Assault of a Child, Class IIA Felony," and sentenced Scott to 3 to 9 years' imprisonment, with 399 days' credit for time served. Scott was ordered to comply with the Nebraska Sex Offender Registry Act.

Scott appeals.

### III. ASSIGNMENTS OF ERROR

Scott claims, consolidated and restated, that (1) his sentence was excessive and (2) his trial counsel was ineffective in several ways.

### IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018). We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

### V. ANALYSIS

#### 1. EXCESSIVE SENTENCE

We initially note that although references are made in the pleadings, and by the parties and the district court, that Scott was convicted of attempted first degree sexual assault *of a child*, he was actually convicted of attempted first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016), a Class II felony, and not attempted first degree sexual assault *of a child* pursuant to Neb. Rev. Stat. § 28-319.01(1) (Reissue 2016), a Class IB felony. And although the information and amended information describe the charged offense using language from a former version of § 28-319(1)(c), we find no reversible error resulting from the erroneous references in the title of the pleadings, nor in the elements as charged.

In *State v. Thielen*, 216 Neb. 119, 342 N.W.2d 186 (1983), both an original and amended information alleged that a defendant did aid or abet the unlawful, felonious, knowing and intentional delivery of a controlled substance; the only significant change made in the amended information was a reference to a different statute in the title to properly correspond to the stated allegation. The Nebraska Supreme Court held that the actual language of the crime charged in the information controls over a reference to an incorrect statute number in such a situation where the language clearly sets out the elements of the crime charged.

Here we have a correct statutory reference, but an inaccurate title. Although the name of the charge in the title of the original information stated "First Degree Sexual Assault of a Child," and the amended information stated "Attempted First Degree Sexual Assault of a Child," both documents correctly cite to § 28-319(1)(c), which pertains to first degree sexual assault; the pleadings make no reference to § 28-319.01(1), which sets forth the offense for first degree sexual assault of a child. As for the language of the offense charged in the body of the documents, the information and amended information both state that Scott, being age 19 or older, subjected "a person of less than [16] years of age to sexual penetration." Although this language could apply to either first degree sexual assault or first degree sexual assault of a child, the factual basis upon which Scott pled clearly alleged that Scott was 19 years old and the victim was 12 years old at the

time of Scott's offense. Compare § 28-319.01(1) (person commits sexual assault of child in first degree when he or she subjects another person under 12 years of age to sexual penetration and actor is at least 19 years of age, or when other person is at least 12 but less than 16 years of age and actor is 25 years of age or older), with § 28-319(1)(c) (any person who subjects another person to sexual penetration when actor is 19 years of age or older and victim is at least 12 but less than 16 years of age is guilty of sexual assault in first degree).

We also point out that the actual language of the crime charged against Scott tracks statutory language of a prior version of § 28-319(1)(c). See Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1995) (any person who subjects another person to sexual penetration when actor is 19 years of age or older and victim is less than 16 years of age is guilty of sexual assault in first degree). Section 28-319(1)(c) was modified in 2006 to include language that the victim is "at least twelve but" less than 16 years of age. See 2006 Neb. Laws, L.B. 1199, § 5. This language remains in the current version of § 28-319(1)(c). Even though the information and amended information here use language contained in the prior version of § 28-319(1)(c), under the circumstances of this case, the language is functionally equivalent to the current statutory definition, and it was undisputed that at the time of the offense, Scott was 19 years old and the victim was 12 years old. See, *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004) (where information alleges commission of crime using language of statute defining that crime or terms equivalent to such statutory definition, charge is sufficient); *State v. Summerville*, 18 Neb. App. 750, 792 N.W.2d 901 (2010) (information cited to statute not in effect at time of defendant's offense that required victim to be under 12 years old; no error where it was undisputed that actual victim was age 10 at time of defendant's offense and allegations in information properly alleged violation of statute in effect at time of offense that required victim to be under 16 years old).

Accordingly, Scott was properly charged and convicted under § 28-319(1)(c). Sexual assault in the first degree is a Class II felony. § 28-319(2) (Reissue 2016). By amending the charge to attempted first degree sexual assault, the classification was reduced from a Class II felony to a Class IIA felony. See Neb. Rev. Stat. § 28-201(4)(b) (Reissue 2016). A Class IIA felony is punishable by up to 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Scott was sentenced to 3 to 9 years' imprisonment, with 399 days' credit for time served. Scott's sentence is within the statutory limits and will be upheld in the absence of an abuse of discretion of the district court. See *State v. Dill, supra*.

When imposing a sentence, the sentencing court should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The record reflects that Scott was age 19 at the time of his offense. The PSR shows juvenile adjudications involving theft, curfew, distribution of controlled substances, and "uncontrollable

juvenile." His adult convictions include theft by taking $500-$1,500, shoplifting, and criminal mischief (2016, 60 months' probation and restitution; probation revoked, 365 days' jail time); and theft by deception $0-$500 (2016, 10 days' jail time).

On the Level of Service/Case Management Inventory (LS/CMI), which assesses the risk the defendant presents to the community, Scott scored "High Risk/Need" in all categories: criminal history, education/employment, family/marital, leisure/recreation, companions (noting concern due to current offense that he listed two minor females as his closest friends), alcohol/drug problem, procriminal attitude/orientation, and antisocial pattern.

On a specific assessment for sex-related offenses, the Vermont Assessment for Sex Offender Risk, Scott scored in the "moderate low risk range overall." However, the PSR also noted attached law enforcement reports in which "there were concerns [that Scott] displayed similar criminal actions towards other young girls." A sex offender evaluation, completed by Dr. Schroeder (attached to PSR), indicated that Scott appeared to be at "moderate risk for sexually reoffending." The competency evaluation (attached to PSR) showed Scott's diagnoses of major depressive disorder (recurrent, mild) and other specified personality disorder with antisocial and borderline features.

Scott submitted two written statements to the district court. In the first, he stated how probation would benefit him. In his second letter, he said he had "taken the negative of this whole situation and turned it into a huge positive." He said there "was an uncertainty with age, along with the absence of appropriate boundaries that led to this charge." According to the PSR, Scott admitted to attempting to contact the victim after his arrest and that Scott had commented, "'I knew it was wrong, but I tried to call her mom to apologize and I wanted [the victim] to know I wasn't mad at her.'" The victim's mother submitted a statement, in which she hoped for imposition of the maximum sentence and alleged that the victim's behavior had changed for the worse as a result of Scott's offense.

The PSR noted potential barriers to probation could be Scott's "mental health and his association with minor females, as well as him remarking he might . . . live by himself, which would be a concern for possible victimization in the future." Scott's overall LS/CMI score was "very high risk." Based on that score, Scott's continued criminal behavior, his past failed attempts at probation, and information from the victim's mother, it was recommended that Scott receive a sentence of imprisonment.

Scott's trial counsel submitted argument primarily in a letter to the district court ahead of sentencing. In part, counsel highlighted Dr. Schroeder's conclusion that Scott was not a pedophile or a high risk candidate to repeat behavior for which he was being sentenced, rather there were concerns about Scott's "immaturity and poor judgment." Counsel requested a term of 2 to 6 years' imprisonment, followed by the longest possible term of postrelease supervision/parole.

During his sentencing hearing, Scott personally expressed his remorse and intent to "prevent this from happening ever again." The district court said it would give Scott credit for entering a plea. It noted Scott's criminal history and prior issues with probation, as well as his LS/CMI overall score as a "high risk to reoffend." It appreciated that Scott's trial counsel had Scott evaluated twice by Dr. Schroeder, noting her conclusions that Scott was not a pedophile and was a moderate risk to reoffend as well as her notes of Scott's mental disorders and substance abuse.

The district court said that in light of the victim being only 12 years old, it could not consider a sentence of probation. Scott was "old enough to walk away from the situation" and the court would not "permit any juveniles of a young age to be sexually abused by adults."

Scott argues on appeal that the district court did not consider the relevant sentencing factors or the statutory criteria for probation listed in Neb. Rev. Stat. § 29-2260(2) (Reissue 2016). Regarding sentencing factors, Scott's only substantive assertion is that the district court "did not mention most of the [sentencing] factors and made no findings with respect to any of them with the exception of [his] prior criminal history, much of which was as a juvenile. There is no indication that the court gave the remaining factors any consideration." Brief for appellant at 10.

Section 29-2260 is a directive to the trial court as to the factors to be considered by the trial court in imposing the sentence. *State v. Hunt*, 214 Neb. 214, 333 N.W.2d 405 (1983). There is, however, no requirement that the court make specific findings. See *id.* Due to permissive language in § 29-2260(2), it is clear that the statute is to serve as a guideline for the court but is not mandatory. See *State v. Hunt, supra*. Likewise, § 29-2260(3) provides grounds that should be given weight in favor of withholding a sentence of imprisonment while "not controlling the discretion of the court." Further, the sentencing factors set forth above from *State v. Mora, supra*, serve as a discretionary guideline for the sentencing judge.

The record reflects that the district court reviewed and considered the PSR and its attachments. The PSR had detailed information concerning all the factors that are discretionary for the court to consider under *State v. Mora, supra*. Along with emphasizing Scott's criminal history (which shows earlier unsuccessful probation terms), the district court emphasized Scott's risks to reoffend and Dr. Schroeder's conclusions about Scott's mental disorders and substance abuse. The district court specifically indicated that another reason for imposing imprisonment was the nature of the case. Scott's sentence is close to what his trial counsel requested for length of an imprisonment term and is well under the statutorily prescribed 20-year maximum sentence. The district court did not abuse its discretion.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Scott asserts he received ineffective assistance of trial counsel. Shortly after the complaint was filed against Scott in the county court in January 2017, Scott's initial trial counsel filed a motion to withdraw as counsel on February 8 due to a conflict of interest. The county court issued an order on February 10, granting the motion and appointing new trial counsel to represent Scott, who then then represented Scott throughout the remainder of the proceedings and sentencing. Therefore, any ineffective assistance of trial counsel claims relate to the second attorney's representation of Scott; we will refer to that attorney as "trial counsel." An order entered by the district court in March 2018, appointed new counsel to represent Scott for his direct appeal, and in response to a show cause order from this court, an order was subsequently entered by the district court granting trial counsel's withdrawal.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). Otherwise, the issue will be procedurally barred. *Id*. The fact that an

ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Avina-Murillo, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). Deficient performance and prejudice can be addressed in either order. *Id*.

Scott claims his trial counsel was ineffective by (1) failing to request a second psychiatric evaluation, (2) failing to interview the State's prospective witnesses, (3) failing to investigate the victim's background and record, and (4) pressuring Scott to plead no contest. We find each claim fails for the reasons discussed next.

(a) Failing to Request Second Psychiatric Evaluation

Scott alleges "Dr. Schroeder concluded that [he] was competent to stand trial, but further found that he lacked the requisite mens rea to commit the crime." Brief for appellant at 5. Scott argues that based on that statement, his trial counsel was ineffective by failing to request appointment of an expert to challenge Dr. Schroeder's competency evaluation. He claims that if a second evaluation had been done, he may have been found incompetent to stand trial and would not have elected to enter a plea.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016). The test of mental capacity to plead is the same as that required to stand trial. *Id*. In order to demonstrate prejudice from counsel's failure to investigate competency and for failing to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found him or her incompetent had a competency hearing been conducted. *Id*.

Dr. Schroeder found Scott had the capacity (1) to understand the nature and object of proceedings against him with sufficient intelligence to understand his legal issues and comprehension of the charges against him and possible consequences, (2) to comprehend his own condition in reference to his legal proceedings (understanding his own role in the charges against him and his own condition in how the charges developed, the court process, and his own role in the legal proceedings), and (3) to work with his attorney to make a rational defense. Dr. Schroeder noted Scott "may not always follow his attorney's advice, however he does seem to have the

capacity to understand his own role in his defense" and was "able to communicate effectively" and "work with his attorney effectively." "He may not always show good judgment in making decisions for himself, although he does seem capable of working with his attorney, if he so desires to do so."

Dr. Schroeder's competency evaluation was thorough and based on information gathered from assessment procedures of four clinical diagnostic interviews, a "Shipley Institute of Living Scale," a "MMPI-2," and a review of police reports and court documents. According to the "Shipley Institute of Living Scale," which estimates intellectual functioning, Scott was "well within average limits." He "exhibited average abilities in both verbal skills and in abstract reasoning skills" and overall "did not appear to have any problems with his intellectual or cognitive abilities." The "MMPI-2" showed that Scott "appeared to answer test items in an honest, genuine manner." Dr. Schroeder evaluated Scott's mental functioning, concluding that overall his "thought processes seemed unimpaired."

Scott does not allege anything in his appellate brief to specifically dispute any information or conclusions contained in Dr. Schroeder's competency evaluation. He does not argue that his competency level did not meet the standards set forth in *State v. Hessler, supra*, and whether he had intent to commit the charged offense is not relevant to the competency determination. See *id.* Further, the record shows that Scott's interactions throughout the proceedings in the district court supported that he would have been competent to stand trial. Also, his submitted letters to the court prior to his sentencing and his statements to the court at his sentencing support that he understood the nature and object of the proceedings against him and his own condition in reference to those proceedings.

The record supports that Scott's trial counsel was not deficient for not requesting a second competency evaluation. And the record refutes that Scott was prejudiced as a result because Scott would not be able to show that he was, in fact, incompetent and that the court would have found him incompetent. See *State v. Hessler, supra*. This claim of ineffective assistance of trial counsel fails.

(b) Failing to Interview State's Prospective Witnesses

Scott claims that his plea was "rendered involuntary by his trial counsel's failure to conduct an adequate pretrial investigation." Brief for appellant at 7. He alleges that his trial counsel should have interviewed the State's prospective witnesses, including "Bridge of Hope" employees who interviewed the victim and law enforcement officers involved in his arrest. *Id.* Although he adequately identifies those whom he complains should have been called as witnesses (record indicates names of those individuals), he fails to sufficiently allege the nature of the testimony of any of those individuals or otherwise state how any information from any of them would have shown deficient performance of his trial counsel aside from the vague assertion that "potential exculpatory evidence could have been discovered." *Id.* See *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018) (allegation that trial counsel was ineffective for not investigating potential witnesses or alibis failed for lack of particularity; in part, defendant did not specify what any potential witness testimony would have been). Scott's claim, therefore, fails for lack of specificity.

### (c) Failing to Investigate Victim's Background and Record

Scott asserts that his trial counsel failed to properly investigate the case by neglecting to investigate the background and record of the victim, which he says deprived him of access to additional and possibly relevant facts that would be necessary for him to properly evaluate his chances of prevailing at trial. He alleges that those "facts could have revealed facts that would have provided a basis for impeaching the victim or challenging her version of the facts." Brief for appellant at 7. He does not explain, however, what other facts may have been relevant to his case, or in what way impeaching the victim or challenging her version of the facts would have prevented him from entering his plea. Further, the record supports that trial counsel engaged in discovery related to the victim. A letter dated February 23, 2018, from Scott's trial counsel to the district court prior to Scott's sentencing states, "I deposed the victim last fall." In that letter, counsel essentially questions the credibility of the victim by comparison of her "forensic interview at the Bridge of Hope" and "her statements to law enforcement" with the "absolutely inconsistent" story the victim provided in her deposition. However, Scott's trial counsel also stated, among other things, that Scott's plea was prompted by Scott's "admissions to police." At Scott's sentencing hearing, trial counsel again stated that he took the victim's deposition. The record supports that trial counsel deposed the victim and had information sufficient to challenge the victim's version of the facts before Scott entered his plea, if he wished to do so. Scott fails to allege with any particularity what other relevant facts could have been determined upon further investigation which would have caused him to proceed to trial rather than entering a plea; this claim of ineffective assistance of trial counsel also fails. See *State v. Golyar, supra*.

### (d) Pressuring Scott to Plead No Contest

The entire substance of Scott's final ineffective assistance of trial counsel claim is that "[b]ecause trial counsel had failed to properly interview witnesses and otherwise prepare for trial, counsel pressured [Scott] into entering a plea" such that his plea "was not voluntary." Brief for appellant at 10. This is a conclusory statement that does not sufficiently allege trial counsel's deficiency, and the claim would fail on this basis alone. See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017) (insufficiently stated claim is no different than claim not stated at all).

Even if it were sufficiently alleged, the record refutes that Scott was pressured into entering his plea of no contest. At the hearing on December 4, 2017, when Scott indicated his plea to the district court, the court asked: "Are you entering your plea of no contest voluntarily of your own free will?" Scott answered, "Yes." The court then inquired, "Has anyone threatened, pressured, or coerced you in any way to get you to enter this plea," to which Scott answered, "No." Additionally, the court asked if anyone had promised to Scott what sentence he would receive, and Scott answered, "No." At the hearing on February 12, 2018, Scott had another opportunity to respond to the district court about the plea he had previously entered; he answered that he understood he pled to a Class IIA felony. The record demonstrates that Scott was not pressured by anyone in submitting his plea. See *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018) (defendant claimed trial counsel advised her to plead guilty because she would receive lenient sentence; record on direct appeal affirmatively refuted claim where colloquy at plea hearing showed defendant denied any threats or promises were made to induce her to enter guilty pleas).

## VI. CONCLUSION

We affirm Scott's conviction and sentence, and we find no merit to any of Scott's claims of ineffective assistance of trial counsel.

AFFIRMED.