IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HUFF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

HERCHEL H. HUFF, APPELLANT.

Filed May 12, 2020.    No. A-19-537.

Appeal from the District Court for Furnas County: JAMES E. DOYLE IV, Judge. Affirmed.

Herchel H. Huff, pro se.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Herchel H. Huff appeals from the orders of the district court for Furnas County which denied various motions filed by Huff, including a motion for new trial, a petition for writ of error coram nobis, and a successive motion for postconviction relief. This is the latest of the many appeals that have followed since Huff's conviction of motor vehicle homicide, among other charges, in connection with the death of Kasey Jo Warner. For the reasons set forth herein, we affirm.

## II. BACKGROUND

### 1. TRIAL AND DIRECT APPEALS

In 2008, Huff was charged with motor vehicle homicide, manslaughter, refusal to submit to a chemical test, and tampering with a witness. Huff pled guilty to the manslaughter charge, but

not guilty to the other crimes with which he was charged. After his conviction for manslaughter but before he was sentenced, Huff filed a plea in bar, asserting that his prosecution for motor vehicle homicide was barred by double jeopardy because of his manslaughter conviction. The district court denied the plea in bar, and the Nebraska Supreme Court affirmed. See *State v. Huff*, 279 Neb. 68, 776 N.W.2d 498 (2009) (double jeopardy clause did not prohibit prosecution for motor vehicle homicide following guilty plea to manslaughter).

A jury trial was held, and Huff admitted at trial that he was driving the car, his Camaro, that struck and killed Warner. Several people observed Huff at the scene of the death and described him as being under the influence of alcohol; other evidence showed that Huff had been drinking alcoholic beverages on the day in question. Ryan Markwardt, a passenger in the Camaro when it struck Warner, observed Huff's drinking, driving of the car, and Warner's death. Although Huff wanted Markwardt to say that he was the one driving, Markwardt refused, and when law enforcement arrived at the scene, Huff admitted that he was the driver. Huff refused to submit to a chemical test after he was transported to the hospital. The jury found Huff guilty of motor vehicle homicide. The district court found him guilty of the remaining counts (tampering with a witness and refusal to submit to a chemical test). Huff was sentenced to imprisonment for a term of 45 to 45 years for motor vehicle homicide and a concurrent term of 20 to 20 years for manslaughter. He was sentenced to imprisonment for 20 to 60 months for tampering with a witness and 5 to 5 years for third-offense refusal to submit to a chemical test, with these sentences to be served consecutively to the sentences for manslaughter and motor vehicle homicide and to one another.

Huff filed a direct appeal, asserting that the district court erred in (1) convicting and sentencing him to multiple punishments for the same offense in violation of double jeopardy, (2) failing to sustain his motion to suppress and allowing evidence at trial that failed to conform to constitutional and statutory requirements, (3) enhancing his conviction for refusal to submit to a chemical test with prior DUI convictions, (4) failing to grant a mistrial when an order in limine precluding mention of Huff's invocation of counsel was violated, (5) finding sufficient evidence to convict him of tampering with a witness, (6) ordering his counsel to guide the State through foundational evidence to introduce an expert opinion, (7) failing to instruct the jury on "'misdemeanor homicide,'" and (8) imposing excessive sentences. *State v. Huff*, 282 Neb. 78, 89, 802 N.W.2d 77, 90 (2011). The Supreme Court affirmed Huff's convictions for motor vehicle homicide, tampering with a witness, and refusal to submit to a chemical test, but it remanded the cause for sentencing on the third-offense refusal to submit to a chemical test. The court also vacated Huff's conviction and sentence for manslaughter.

On remand, Huff was resentenced on the refusal to take a chemical test to 60 days' incarceration, a $500 fine, and the suspension of his license for 6 months after his release from incarceration. Huff appealed this sentence, and the Nebraska Supreme Court summarily affirmed. *State v. Huff*, 283 Neb. xix (No. S-11-1102, Apr. 11, 2012).

## 2. POSTCONVICTION MOTION AND
### FIRST POSTCONVICTION APPEAL

In August 2012, Huff filed a verified motion for postconviction relief, alleging numerous claims of ineffective assistance of counsel, prosecutorial misconduct, trial court error, law enforcement misconduct, and denial of his right to appellate counsel, and he requested an

evidentiary hearing. In October, the district court denied some of Huff's claims without an evidentiary hearing and granted him an evidentiary hearing on other claims. Huff appealed from the order dismissing some of his claims, challenging the court's dismissal of two of his claims of ineffective assistance of trial counsel without an evidentiary hearing, and this court affirmed. See *State v. Huff*, No. A-12-1072, 2013 WL 6622896 (Neb. App. Dec. 17, 2013) (selected for posting to court website).

### 3. SECOND POSTCONVICTION APPEAL

Following the first postconviction appeal, the State then filed a motion to dismiss the remainder of Huff's postconviction claims, which the district court granted in part and denied in part. Specifically, the court dismissed two additional claims of ineffective assistance of counsel without an evidentiary hearing, as well as claims of prosecutorial misconduct, trial court error, and law enforcement misconduct to the extent those claims differed from Huff's claims of ineffective assistance of trial counsel. The court overruled the balance of the State's motion to dismiss. Huff again appealed, and in case No. A-14-985, an unpublished memorandum opinion dated June 26, 2015, we affirmed.

### 4. EVIDENTIARY HEARING AND THIRD POSTCONVICTION APPEAL

In May 2016, an evidentiary hearing was held on Huff's remaining postconviction claims, and in September, the district court entered an order denying postconviction relief. On appeal from that order, Huff asserted that the district court erred in (1) denying his claim that the court violated his constitutional rights by allowing voir dire of prospective jurors to proceed in chambers outside of Huff's presence and (2) denying his claim that his trial attorneys were ineffective in not objecting or moving for a mistrial following the voir dire of prospective jurors in chambers outside of Huff's presence. This court affirmed, finding that Huff's claim that his constitutional rights were violated by the voir dire of prospective jurors in chambers outside of his presence was procedurally barred and that the failure of Huff's trial counsels to object or move for a mistrial following such voir dire did not constitute deficient performance. See *State v. Huff*, 25 Neb. App. 219, 904 N.W.2d 281 (2017).

### 5. MOTION FOR DNA TESTING

On March 5, 2018, Huff filed a motion for DNA testing under the DNA Testing Act, asking that the Camaro be tested for Markwardt's DNA to establish that Markwardt, rather than Huff, was the driver who struck Warner. The district court entered an order, denying DNA testing. Huff appealed, but on November 28, in case No. A-18-1073, we dismissed the appeal without opinion pursuant to a motion filed by Huff.

### 6. MOTIONS RELEVANT TO CURRENT APPEAL

In October 2018, Huff filed multiple pro se motions in the district court. The motions most relevant to Huff's present appeal are his motion for new trial, petition for writ of error coram nobis, and a successive motion for postconviction relief.

(a) Motion for New Trial

On October 19, 2018, Huff filed a 34-page motion for new trial pursuant to Neb. Rev. Stat. § 29-2101(5) (Reissue 2016), claiming newly discovered evidence. As summarized by the district court in the order ruling on Huff's motion:

> [I]n the first part of his motion, Huff contended there were irregularities and misconduct before, during and after the proceedings that warrant granting of a new trial and he set forth fifty-nine paragraphs wherein he described the alleged irregularities and misconduct and violations of his constitutional rights. Huff claims that most, if not all, of such irregularities and misconduct constituted 'structural error, plain error, prejudicial error, prosecutor misconduct, and ineffective assistance of counsel.' In the second part of his motion, Huff contended his trial after his plea of guilty to the manslaughter charge and sentencing were illegal, a miscarriage of justice, and violated his constitutional rights. Thereafter, Huff described in nine paragraphs, claims of 'actual innocence' which he labeled as 'actual innocent.'

> In the third part of his motion for a new trial. Huff asserted 'cumulative errors' violated his constitutional rights under the fourth, fifth, sixth, eighth and fourteenth amendments to the United States Constitution. Huff asked for a 'full evidentiary hearing' and thereafter the vacation of his convictions and his sentences.

Huff did not attach any affidavits or other documentation to his motion for new trial. We discuss the claims in Huff's motion for new trial further as necessary to the resolution of this appeal in the analysis section below.

(b) Petition for Writ of Error Coram Nobis
and Successive Postconviction Motion

On October 22, 2018, Huff filed a 34-page petition for writ of error coram nobis and a 34-page successive motion for postconviction relief, each containing claims nearly identical to those he had raised in his motion for new trial. Again, we discuss details of Huff's claims in these pleadings as necessary to the resolution of this appeal in the analysis section below.

7. HEARINGS

On February 20, 2019, the district court held a hearing, in which Huff was allowed to argue his motion for new trial, petition for writ of error coram nobis, and successive postconviction motion, as well as other motions he had filed in October 2018. With respect to his motion for new trial, Huff informed the court that he wanted it to consider all of the evidence previously adduced in support of his motion for new trial, as well as "all new evidence introduced." When the court asked Huff what new evidence he had in support of his motion for new trial, Huff simply replied, "That's . . . all the new information that's in . . . the Motion for a New Trial." When the court asked again whether Huff had any evidence that he was "offering right now in support" of his motion, Huff acknowledged that he did not have any new evidence to offer; however, he asked the court to consider the allegations he had in his motion and the fact that he believed the Camaro was "destroyed" because it had been left outside at some point after his trial. Huff also argued that he

should be given a new trial because he was not able to make the claims alleged in his motion until he was able to read through the bill of exceptions from trial.

The district court also considered Huff's successive motion for postconviction relief and a motion for appointment of postconviction counsel at the February 2019 hearing. When the court asked if there was anything else Huff wanted to tell him about the successive postconviction motion, Huff indicated that "the paperwork . . . should say it all." Then he repeated his request for an attorney to help him "navigate the legal system and the paperwork" because he felt that "there's enough there to warrant having an attorney" to represent him.

Finally, the district court considered the petition for writ of error coram nobis, and Huff again stated that "the paperwork speaks for itself." He also stated, "I submit it and all the . . . everything with it -- the exhibits and everything. I submitted exhibits to you; and I think that's enough to . . . get her done with you." We note that Huff did not actually offer any exhibits at the hearing in support of his petition for writ of error coram nobis.

Two additional motions subsequently filed by Huff were heard by the district court on April 17, 2019--a motion to allow the taking of depositions and a motion to disqualify an attorney for the State.

### 8. DISTRICT COURT'S ORDERS

#### (a) Order of May 2, 2019

On May 2, 2019, the district court entered a comprehensive 37-page order plus three appendices (a procedural and factual case history, a case filing summary, and a speedy trial timeline), dismissing the motions filed by Huff in October 2018 (with the exception of the successive motion for postconviction relief, which the court addressed separately) along with the two additional motions heard by the court in April 2019. The court detailed specific findings with respect to Huff's motion for new trial, the petition for writ of error coram nobis, as well as Huff's motions for disqualification of the judge, motions to compel Huff's former attorneys to release the case file, a motion to discharge on speedy trial grounds, a motion to dismiss the indictment because of pretrial publicity and jury misconduct, motions for the arrest of the individuals responsible for improperly safekeeping and storing the Camaro, and motions for the appointment of counsel. Based on its findings, the court then dismissed the discussed motions, and it summarily dismissed other pending motions as listed in its order. We have addressed the court's specific findings with respect to the motions dismissed in its May 2, 2019, order as necessary to the resolution of Huff's appeal in the analysis section below.

#### (b) Order of May 7, 2019

On May 7, 2019, the district court entered a separate written order denying Huff's successive motion for postconviction relief. The court found that the motion was both time barred and procedurally barred. Again, we have addressed the court's specific findings as necessary in the analysis section below.

### III. ASSIGNMENTS OF ERROR

Huff asserts that the district court erred in (1) dismissing his motion for new trial, petition for writ of error coram nobis, and postconviction motion without evidentiary hearings; (2)

dismissing his motion for return of seized property without first holding an evidentiary hearing or initiating forfeiture proceedings; (3) failing to order the State to preserve the Camaro; (4) failing to hold hearings on pending motions and then "dismissing them all at one time"; and (5) failing to address the conflict of interest of the county attorney and attorney general, who were witnesses for Huff. Brief for appellant at 4.

## IV. STANDARD OF REVIEW

A de novo standard of review applies when an appellate court is reviewing a trial court's dismissal of a motion for a new trial under Neb. Rev. Stat. § 29-2102(2) (Reissue 2016) without conducting an evidentiary hearing. *State v. Cross*, 297 Neb. 154, 900 N.W.2d 1 (2017).

The findings of the district court in connection with its ruling on a motion for a writ of error coram nobis will not be disturbed unless they are clearly erroneous. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016).

If the facts in a case are undisputed, the issue as to when the statute of limitations begins to run is a question of law. *State v. Koch*, 304 Neb. 133, 933 N.W.2d 585 (2019). When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion. *Id.* Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling. *State v. Hessler*, 305 Neb. 451, 940 N.W.2d 836 (2020).

## V. ANALYSIS

### 1. Dismissal of Motion for New Trial, Petition for Writ of Error Coram Nobis, and Successive Postconviction Motion

In his first assignment of error, Huff asserts that the district court erred in dismissing his motion for new trial, petition for writ of error coram nobis, and postconviction motion without evidentiary hearings. We address his arguments with respect to the dismissal of each of these pleadings separately below.

### (a) Motion for New Trial

In denying Huff's motion for new trial, the district court addressed each ground Huff alleged in his motion. Its thorough and comprehensive analysis of Huff's motion for new trial is consistent with our own de novo review. With respect to the allegations Huff made particularly in the first part of the motion, the court specifically addressed Huff's claims concerning (1) the waiver of his presence at pretrial hearings, (2) deficiencies in or failures to read the information or properly arraign Huff, (3) denial of Huff's speedy trial rights, (4) the testimony of Markwardt, (5) trial counsel and deficiency in trial counsel's performance, (6) Huff's arrest, (7) timely sentencing on his manslaughter plea, (8) misconduct by the sheriff, (9) deficiencies in the selection and conduct of jurors, (10) the sequestration of witnesses in violation of a motion in limine, (11) improprieties at sentencing, (12) evidence with respect to Huff's conviction for manslaughter, (13) jury instructions and adverse rulings on evidence, and (14) other paragraphs of Huff's motion for new trial not specifically mentioned elsewhere in the court's May 2, 2019, order. After reviewing the allegations in the first part of Huff's motion, the court found that Huff had not identified any newly

discovered evidence that could not, with reasonable diligence, have been discovered prior to or at his trial. Nor had he shown that any of the alleged newly discovered evidence identified in his motion would have been so substantial that a different result might have been reached had the evidence been available to Huff at trial. Accordingly, the court found that all of the claims made by Huff in the first part of his motion for new trial were without merit and should be denied.

Next, the district court addressed Huff's claims of actual innocence and rejected each of them. While we do not repeat the court's analysis of all of those claims here, we note that in addressing Huff's claim that he was entitled to relief because his attorneys and the prosecutor failed to pursue DNA testing, the court stated that for Huff to now claim that someone else was driving the car that struck and killed Warner "exceeds the strains of credulity," is contrary to the facts established at trial beyond a reasonable doubt, and is contrary to Huff's repeated declarations under oath that he was the driver. The court also observed that Huff's contention that biased jurors were impaneled in violation of his constitutional rights had been previously raised on postconviction and resolved against him.

Finally, the district court addressed the third part of Huff's motion for new trial where he asserted various cumulative errors. The court determined that this part of Huff's motion did not contain any specificity or factual allegations and did not identify any newly discovered evidence that could not have been discovered, with reasonable diligence, prior to or at his trial. Accordingly, the court rejected those claims as well.

Pursuant to § 29-2101(5), a new trial, after a verdict of conviction, may be granted, on the application of the defendant, on the grounds of "newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial" that materially affect the defendant's substantial rights. A motion for new trial based on the grounds set forth in this subsection "shall be filed within a reasonable time after the discovery of the new evidence" and not more than 5 years after the date of the verdict, "unless the motion and supporting documents show the new evidence could not with reasonable diligence have been discovered and produced at trial and such evidence is so substantial that a different result may have occurred." Neb. Rev. Stat. § 29-2103(4) (Reissue 2016). See *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020) (to obtain new trial based on newly discovered evidence, defendant must show that new evidence could not with reasonable diligence have been discovered and produced at trial and that evidence is so substantial that different result may have occurred).

"The ground set forth in subdivision (5) of section 29-2101 shall be supported by evidence of the truth of the ground in the form of affidavits, depositions, or oral testimony." § 29-2102(1). Section 29-2102 further provides:

> (2) If the motion for new trial and supporting documents fail to set forth sufficient facts, the court may, on its own motion, dismiss the motion without a hearing. If the motion for new trial and supporting documents set forth facts which, if true, would materially affect the substantial rights of the defendant, the court shall cause notice of the motion to be served on the prosecuting attorney, grant a hearing on the motion, and determine the issues and make findings of fact and conclusions of law with respect thereto.

> (3) In considering a motion for new trial based on the grounds set forth in subdivision (5) of section 29-2101, if the court finds that there is evidence materially affecting the substantial rights of the defendant which he or she could not with reasonable

diligence have discovered and produced at trial, the court may, upon the motion of any party and following a hearing, vacate and set aside the judgment and release the person from custody or grant a new trial as appropriate.

The district court did not err in denying Huff's motion for new trial based on newly discovered evidence without an evidentiary hearing. Huff did not attach any affidavits, depositions, or documentation supporting the claims made in his motion. Huff was given the opportunity to offer evidence in support of his motion for new trial at the February 20, 2019, hearing, but he did not do so. And, as discussed by the court in its May 2 order, none of Huff's claims actually allege new evidence. Rather, Huff has alleged claims involving things that occurred before or at trial or during sentencing. Huff has not established the existence of any new evidence warranting a new trial. In his motion and arguments at the February 20 hearing, Huff relied on his discovery during the DNA testing proceedings of the fact that his Camaro was stored outside at some point following his trial. However, the circumstances of the storage of Huff's car does not constitute newly discovered evidence.

In his motion for new trial and in his brief on appeal, Huff asserts that he is "'actually innocent' of being the driver of the vehicle" in light of "the 'newly discovered' evidence inculpating . . . Markwardt." Brief for appellant at 21. However, Huff only cites to Markwardt's trial testimony and alleges that Markwardt testified at trial that he was the driver and perjured himself in other portions of his testimony when he denied driving the car. As did the district court, we disagree with Huff's interpretation of the evidence at trial. Both Huff and Markwardt testified at trial that Huff was the driver. The testimony Huff relies on for his assertion that Markwardt stated otherwise was plainly testimony in which Markwardt explained the direction of the vehicle's travel and not an admission that he was driving. Even if he had, Markwardt's testimony was presented to the jury at trial and is not newly discovered evidence. The district court found that Huff's claim of actual innocence based on an assertion that Markwardt was the driver was contrary to "the facts established beyond a reasonable doubt at the trial" and to "Huff's repeated declarations under oath that he was the driver" and "reaches toward absurdity." Based upon our de novo review, the court did not err in denying Huff's motion for new trial without an evidentiary hearing.

(b) Petition for Writ of Error Coram Nobis

The common-law writ of error coram nobis exists in this state under Neb. Rev. Stat. § 49-101 (Reissue 2010), which adopts English common law to the extent that it is not inconsistent with the Constitution of the United States, the organic law of this state, or any law passed by our Legislature. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016). The purpose of the writ of error coram nobis is to bring before the court rendering judgment matters of fact which, if known at the time the judgment was rendered, would have prevented its rendition. *Id.* The writ reaches only matters of fact unknown to the applicant at the time of judgment, not discoverable through reasonable diligence, and which are of a nature that, if known by the court, would have prevented entry of judgment. *Id.* The writ is not available to correct errors of law. *Id.* Claims of errors or misconduct at trial and ineffective assistance of counsel are inappropriate for coram nobis relief. *Id.*

The burden of proof in a proceeding to obtain a writ of error coram nobis is upon the applicant claiming the error, and the alleged error of fact must be such as would have prevented a conviction. *Id.* It is not enough to show that it might have caused a different result. *Id.*

After examining each of the claims made by Huff in his petition for writ of error coram nobis, the district court found none of them to be meritorious and that they did not rise to the level of the type of claims which would support a writ of error coram nobis. The court's findings are not clearly erroneous. As noted above, the claims in Huff's petition were nearly identical to the claims raised in his motion for new trial, and consisted of allegations of district court error, error by the State and ineffective assistance of trial counsel, none of which are appropriate for coram nobis relief. See *id*. Huff did not allege any matters of fact which were unknown to him at the time of the judgment or which were not discoverable through reasonable diligence. Nor were the allegations of such a nature that, had they been known by the court, they would have prevented the entry of judgment. Huff did not sustain his burden to establish an error of fact, and he failed to establish that the alleged errors of fact would have prevented his conviction for any one of the crimes for which he was convicted. The court did not err in denying Huff's petition for writ of error coram nobis without an evidentiary hearing.

(c) Successive Motion for Postconviction Relief

This is not Huff's first motion for postconviction relief. In dismissing this successive motion, the district court observed that the claims in Huff's current motion for postconviction relief are nearly identical to those he raised in his motion for new trial, and the court described them as "a farrago of duplicative and contrived claims." Consistent with our own assessment of Huff's claims in this successive motion, the court divided them into four broad categories: (1) Huff was unaware his attorneys requested continuances or waived his presence at hearings; (2) he failed to receive effective assistance of counsel during his trial and his appeals; (3) Markwardt testified falsely at trial, Huff's attorneys failed to negate such false testimony, and the prosecutor improperly took advantage of such false testimony; and (4) omnibus conclusory claims that his constitutional and other rights were violated.

A defendant is entitled to bring a second proceeding for postconviction relief only if the grounds relied upon did not exist at the time the first motion was filed. *State v. Amaya*, 298 Neb. 70, 902 N.W.2d 675 (2017). The 1-year statute of limitations in Neb. Rev. Stat. § 29-3001(4) (Reissue 2016) applies to all verified motions for postconviction relief, including successive motions. *State v. Amaya, supra*. Section 29-3001(4) provides:

A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:

(a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;

(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;

(c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or

(e) August 27, 2011.

Huff's convictions became final on August 26, 2011 upon the filing of the Nebraska Supreme Court's opinion in *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). He filed the current motion for postconviction relief on October 22, 2018. Accordingly, Huff's successive motion is time barred absent facts bringing his claims within § 29-3001(4)(b), (c), or (d). Huff has not made that showing with respect to any of the claims set forth in his successive motion. The factual predicates of his claims would have been known to Huff at the time of his trial and sentencing, there was no state created impediment, and his claims are not based on a newly recognized constitutional right. The district court did not err in finding that Huff's successive motion was time barred.

Further, because Huff's claims could have been asserted on direct appeal, they were also procedurally barred. See *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019) (motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal). No evidentiary hearing was warranted on Huff's claim, and the district court was correct in finding Huff's successive motion was also procedurally barred.

Huff relies on *State v. Harris*, 292 Neb. 186, 871 N.W.2d 762 (2015) to argue that the court erred in dismissing his successive motion as procedurally barred. In *Harris*, the Supreme Court held that the district court erred when it dismissed the postconviction action solely on the basis that other motions for relief were pending, but Huff ignores the details of the court's findings in that case. In *Harris*, the court held:

[A] court presented with a motion for postconviction relief which exists simultaneously with a motion seeking relief under another remedy must dismiss the postconviction motion without prejudice when the allegations, if true, would constitute grounds for relief under the other remedy sought. See [Neb. Rev. Stat.] § 29-3003 [(Reissue 2016)]. If the district court determines the other remedy has no grounds for relief, the postconviction motion is not procedurally barred under § 29-3003 and should be considered on its merits.

*State v. Harris*, 292 Neb. at 191, 871 N.W.2d at 766. Here, the district court did not rule on Huff's successive postconviction motion until after it his denied his motion for new trial, petition for writ of error coram nobis, and other pending motions, and it did not base its dismissal on § 29-3003 as the lower court did in *Harris*.

On appeal, Huff argues that he should be permitted to establish actual innocence as a gateway for this court to address his claims on the merits, essentially arguing actual innocence as a form of equitable tolling. The doctrine of equitable tolling permits a court to excuse a party's failure to comply with the statute of limitations where, because of disability, irremediable lack of information, or other circumstances beyond his or her control, the plaintiff cannot be expected to file suit on time. *State v. Mata*, 304 Neb. 326, 934 N.W.2d 475 (2019). The Nebraska Supreme Court has not determined whether the doctrine of equitable tolling applies to postconviction actions

brought under § 29-3001. See *State v. Mata, supra*. The Court, however, has addressed what is required to show actual innocence, and Huff has not met the extraordinarily high threshold required for such a showing.

The essence of a claim of actual innocence is that the State's continued incarceration of such a petitioner without an opportunity to present newly discovered evidence is a denial of procedural or substantive due process. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). The threshold to entitle a prisoner to an evidentiary hearing on a postconviction claim of actual innocence is extraordinarily high. *Id.* Such a petitioner must make a strong demonstration of actual innocence, because after a fair trial and conviction, the presumption of innocence vanishes. *Id*. Here, Huff asserts that Markwardt lied about Huff driving the Camaro, but he has provided no allegations of new evidence showing that to be the case. Huff only cites to statements found in Markwardt's trial testimony, and, Huff himself testified at trial that he was the driver of the vehicle. Huff has not made such a strong demonstration of actual innocence to overcome or even approach the threshold entitling him to an evidentiary hearing.

2. MOTION FOR RETURN OF SEIZED PROPERTY

Huff asserts that the district court erred in dismissing his motion for return of seized property without first holding an evidentiary hearing or initiating forfeiture proceedings. On August 17, 2018, Huff filed a motion for return of seized property, seeking the return of two pool stick cases, two pool sticks, a CD player, an "[a]mp" and related items, shaving items, and the Camaro. Upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner unless the government has a continuing interest in the property. *State v. Ebert*, 303 Neb. 394, 929 N.W.2d 478 (2019). Property seized and held as evidence shall be kept so long as necessary for the purpose of being produced as evidence at trial. *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017) (postconviction proceedings are equivalent of trial for purposes of statute governing seized property). See, also, Neb. Rev. Stat. § 29-818 (Reissue 2016) (concerning seized property).

There is nothing in the record to show that the court has actually ruled on Huff's motion for return of seized property. It was not one of the motions addressed at either the February 20 or April 17, 2019, hearing. Nor did the court rule upon it anywhere in either of the two orders from which Huff has appealed. The case filing summary appendix attached to the court's May 2 order does not reflect any ruling by the court on that motion. Because the court has not yet ruled on the motion, there is nothing for us to consider. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020).

Huff argues that the district court should have ruled on the motion for return of seized property based on a motion to rule on pending motions that he filed on October 17, 2018, which did list the motion for return of seized property as something the court still needed to rule on. The court did reference the motion to be heard on pending motions in its May 2, 2019, order as being one of "the motions, requests, and petitions" that was being "overruled, denied and dismissed." And, it specifically stated that the October 17, 2018, motion to be heard on pending motions was satisfied by the hearing held on February 20, 2019, and the rulings in the court's May 2 order. Given the ongoing postconviction proceedings and multitudinous filings that were still before the

- 11 -

court at the time of its May 2 order, we cannot say that it erred in denying the motion to rule on pending motions with respect to Huff's motion for return of seized property at that point. Huff's second assignment of error fails for the reasons stated.

### 3. FAILURE TO ORDER PRESERVATION OF CAMARO

Huff asserts that the district court erred in failing to order the State to preserve the Camaro. On September 6, 2018, Huff filed a motion, seeking to preserve the Camaro "from further damage, by placing it in a secured shed with the windows rolled up and the T-Tops placed back on it." He filed similar motions on February 15 and April 29, 2019. In his brief on appeal, Huff references an August 7 order in which the court granted his motion to preserve the Camaro and "finally preserved the evidence." Brief for Appellant at 28. He argues that the court "clearly abused it [sic] discretion by denying failing [sic] to address the Motion to preserve the evidence until 8 years later, and after it was destroyed." Brief for appellant at 32-33. Given that Huff filed his notice of appeal in the district court on June 3, any order entered by the court in August is not the subject of the current appeal, which was from the court's orders of May 2 and May 7. Huff's third assignment of error is not properly before this court.

### 4. DISMISSAL OF PENDING MOTIONS

Huff asserts that the district court erred in failing to hold hearings on pending motions and then "dismissing them all at one time." Brief for appellant at 4. Huff argues that he filed "numerous motions which [were] never heard and straight denied without the district court addressing them." Brief for appellant at 34. He then lists a number of motions that were filed in October 2018, including the motion for new trial, petition for writ of error coram nobis, and his successive postconviction motion, and all of which were addressed at the February 20, 2019, hearing and in the court's May 2 order of dismissal. Huff also references two appellate cases that he claims were pending at the time the court entered the May 2 order, which he argues prevented the court from having jurisdiction to dismiss his motions. However, the appeals referenced by Huff are not from the current criminal action and had no effect on the court's ability to dismiss Huff's motions.

As noted in the background section above, Huff had the opportunity to argue all of the motions referenced in this section of his brief to the district court at the February 20, 2019, hearing, and although the court summarily denied some of those motions in the May 2 order, it did make specific findings as to others. We have addressed the court's findings with respect to the motion for new trial, petition for writ of error coram nobis, and successive postconviction motion and Huff's arguments in support of his first assignment of error above. In arguing his fourth assignment of error, Huff has not presented any additional arguments with respect to those three motions, and he does not specifically argue the merits of his fourth assignment of error with respect to any of the other motions in this section of his brief or elsewhere. Because Huff has not demonstrated how the court erred in denying the motions identified, we decline to address the dismissal of the motions Huff references in connection with his fourth assignment of error, except to the extent we have already addressed the dismissal of the motion for new trial, the petition for writ of error coram nobis, and the successive postconviction motion. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019).

- 12 -

## 5. FAILURE TO ADDRESS CONFLICT OF INTEREST

Huff asserts that the district court erred in failing to address the conflict of interest of the county attorney and attorney general, who were witnesses for Huff. Huff argues that both "Morgan R. Farquhar" and "Assistant Attorney General Michael Guinan" are "to be called as witnesses in all pending litigation, which also creates a conflict of interest." Brief for appellant at 37.

According to Huff's brief, Farquhar "is also representing Furnas County as the acting County Attorney" and that his "true loyalty is to Furnas County and another individual and entity, "causing a conflict of interest in this case." Brief for appellant at 37. Huff apparently filed motions concerning this conflict of interest, which are not found in the record in this case. We note that an order entered by the district court in November 2018, references two motions of conflict of interest with Farquhar filed by Huff as being motions that were still pending before the court. However, in its May 2, 2019, order, the court observed that while these motions were addressed at the February 20 hearing, "after a review of the file and the pleadings it was determined these pleadings were misfiled in the instant case and should have been filed in another case." Accordingly, the court made no disposition of the motions with respect to Farquhar in the present case. We decline to further address any arguments with respect to Farquhar.

As to Guinan, Huff filed a motion on March 20, 2019, to disqualify Guinan, an Assistant Attorney General, who is acting as Special Deputy Furnas County Attorney in Huff's criminal case. In that motion, Huff alleged that Guinan should be disqualified because Guinan would be a witness on Huff's behalf regarding exculpatory evidence relevant to his motion for new trial. Specifically, Huff stated, "It has come to light that there are communications between . . . Guinan to [sic] Brian Davis which indicates evidence of the vehicle in question which was obtain [sic] in the past few weeks." He stated further, "This is exculpatory evidence that is relevant to the motion for New Trial and which . . . Guinan will be witness on my behalf." Finally, he stated, "There is also evidence of a[n] affidavit written under oath in regards to the vehicle, and the fact he [sic] was being held for evidence in this case, and . . . Guinan was not going to release it because Huff was still litigating his case." Huff also asserted that Guinan's appointment was improper pursuant to Neb. Rev. Stat. § 23-1204.01 (Reissue 2012) (concerning appointment of special deputy county attorneys). Huff's motion to disqualify Guinan was heard by the district court on April 17. In its May 2 order, after finding that Huff was not entitled to an evidentiary hearing on his motion for new trial, the court summarily denied the motion to disqualify Guinan as Special County Attorney.

The district court did not err in summarily denying Huff's motion to disqualify Guinan. It is clear based on Huff's motion and the arguments he made at the April 2019 hearing that Huff considered Guinan a witness on his behalf if an evidentiary hearing was ordered with respect to the motion for new trial and/or other motions pending in his criminal case, as well as possibly in other cases Huff had on file, based on communications between Guinan and a former attorney of Huff's, indicating that the Camaro was still being held as evidence because "Huff still wants to litigate matters concerning the car." At the hearing, Guinan explained the communication between Huff's attorney and him, indicating that he had sent an email to the attorney near the end of the previous postconviction case about releasing the Camaro, but that after the attorney informed Guinan that Huff would be filing a DNA-related claim, Guinan informed the attorney that he would not be able to release the car at that point.

As discussed above, the district court properly denied Huff's motion for new trial, petition for writ of error coram nobis, and successive motion for postconviction relief without evidentiary hearings. Accordingly, to the extent that Huff's motion to disqualify Guinan as a witness related to his requests for evidentiary hearings in those matters, the court did not err in summarily denying Huff's motion to disqualify. We decline to comment on the denial of the motion to disqualify in relation to any other cases, outside of the present criminal case, in which Huff might want or have wanted to call Guinan as a witness.

Huff also argues that it was improper under § 23-1204.01 for Guinan to appear as a Special Deputy Furnas County Attorney because Huff's trial is over. As noted by the State, however, § 23-1204.01 does not specifically prohibit a special deputy county attorney being appointed in a postconviction matter as Huff alleges. Accordingly, Huff's arguments in that regard must fail.

## VI. CONCLUSION

The district court did not err in denying Huff's motion for new trial, his petition for writ of error coram nobis, or his successive motion for postconviction relief without evidentiary hearings. Huff's remaining assignments of error fail for the reasons discussed above.

AFFIRMED.